Filed 11/6/14  In re Andrew V. CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| In re ANDREW V. et al., Persons Coming Under the Juvenile Court Law. | |
| ORANGE COUNTY SOCIAL SERVICES AGENCY, <br><br>    Plaintiff and Respondent, <br><br>        v. <br><br> ABEL V., SR., et al., <br><br>    Defendants and Appellants. | G049985 <br><br> (Super. Ct. Nos. DP019455, DP019456 & DP021441) <br><br> ORDER MODIFYING OPINION AND DENYING PETITION FOR REHEARING; NO CHANGE IN JUDGMENT |

The opinion, filed October 10, 2014, is hereby modified in the following particulars:

1.  In the first paragraph of the discussion section on page 6, delete sentence three that begins with "It should have used the clear and convincing . . ." and replace with the following sentence:

"It should have used the preponderance of the evidence standard instead of clear and convincing."

2.  On page 12, delete the first full paragraph that begins with "We presume the correctness . . . ."

This modification does not effect a change in judgment.

The petition for rehearing is DENIED.



BEDSWORTH, ACTING P. J.

WE CONCUR:


ARONSON, J.


THOMPSON, J.

Filed 10/10/14  In re Andrew V. CA4/3 (unmodified version)

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| In re ANDREW V. et al., Persons Coming Under the Juvenile Court Law. | |
| ORANGE COUNTY SOCIAL SERVICES AGENCY, <br><br>     Plaintiff and Respondent, <br><br>     v. <br><br> ABEL V., SR., et al., <br><br>     Defendants and Appellants. | G049985 <br><br> (Super. Ct. Nos. DP019455, DP019456 & DP021441) <br><br> O P I N I O N |

Appeal from orders of the Superior Court of Orange County, Deborah C. Servino, Judge.  Affirmed.

Matthew I. Thue, under appointment by the Court of Appeal, for Defendant and Appellant Abel V., Sr.

Leslie A. Barry, under appointment by the Court of Appeal, for Defendant and Appellant Sandra J.

Nicholas S. Chrisos, County Counsel, Karen L. Christensen and Debbie Torrez, Deputy County Counsel, for Plaintiff and Respondent.

No appearance for the Minors.

**INTRODUCTION**

Sandra J. and Abel V., Sr., the parents of three boys, Andrew, Abel., Jr., and Abraham V., appeal from orders of the juvenile court. Sandra appeals from an order denying her motion under Welfare & Institutions Code section 388[1] and an order terminating her parental rights under section 366.26. Abel, Sr., appeals from an order terminating his parental rights.

We affirm the orders. Sandra did not meet her burden to show changed circumstances. She also did not meet her burden with respect to the beneficial relationship exception to the termination of her parental rights.

Abel, Sr., maintains that the juvenile court erred when it found the children adoptable, a prerequisite to termination of parental rights. The court had substantial evidence on which to base a finding of adoptability. The termination of Abel, Sr.'s parental rights on this ground was therefore within the court's discretion.

**FACTS**

Orange County Social Services Agency (SSA) detained Abel, Jr., at birth in February 2010, after a toxicology screen revealed the presence of amphetamines in his system. Sandra admitted to smoking crystal methamphetamine five days before Abel, Jr.'s birth and using drugs earlier in her pregnancy. When SSA learned that Sandra had an older child, Andrew, born in July 2008, he too was detained.[2] Sandra and Abel, Sr., were not married and did not reside together at the moment.[3] The court sustained the dependency petition as to Andrew and Abel, Jr., and they were placed with Abel, Sr.'s parents.

---

[1] All further statutory references are to the Welfare and Institutions Code unless otherwise indicated.

[2] Andrew was severely delayed in all aspects of his development. An assessment in January 2010, when he was 18 months old, placed his cognitive, motor, and emotional development at between 1 and 5 months. At 19 months, he could not sit up, feed himself, or speak. He was subsequently diagnosed as suffering from cerebral palsy. He received a feeding tube in March 2011.

[3] Abel, Sr., and Sandra had resided together for some time at Sandra's parents' house. Abel, Sr., moved out and into his own parents' house because he and Sandra did not get along.

Sandra entered an inpatient drug rehabilitation center in July 2010. She had been unable to stay off drugs in the months before her admission long enough to permit her to enter the program before July. She tested positive for drugs continuously between February and July 2010. She was discharged from rehabilitation in September (for breaking one of the rules) and re-entered in December. She was discharged again in March 2011.

In July 2011, while the dependency proceedings were still active, Sandra gave birth to Abraham. He too was detained at birth, but remained with Sandra. In August, the two other boys joined Sandra and Abraham in Sandra's parents' home for a 60-day trial visit. In October, the court ordered the two older boys returned to Sandra, who was living at her parents' house, under a family maintenance program. She missed nine drug tests between November 2011 and March 1, 2012.

The children remained with Sandra until July 2012. Sandra had missed three drug tests in March and April 2012, had missed five drug tests in May and June, and had allowed Abel, Sr., to have unauthorized contact with the children.[4] Sandra was warned at a July 10 team meeting that one more missed drug test would result in the children being removed from her custody. She missed another test, and the boys were removed to Abel, Sr.'s parents' house on July 12. Sandra tested positive for amphetamines on that date. She also missed five tests in September 2012. After July, Sandra visited the children four hours a week until the termination hearing in April 2014.

Abel, Sr., initially agreed to go into inpatient rehabilitation during the spring of 2010, but later changed his mind, walking out of two different programs. He was still using drugs. He too tested positive for drugs almost continuously between February and March and between May and July 2010. He finally entered an inpatient rehabilitation program in December 2010 and was discharged in March 2011. He had

---

[4] During this time, Abel, Sr., was still using drugs.

positive drug tests in May, June, and July 2011. He also missed several tests. He was still testing positive in August 2011, after the birth of his third son, and after graduating from a substance abuse program. He was also missing drug tests in September and October.

SSA filed a supplemental petition under section 387 on July 16, 2012. The petition alleged, among other things, that Sandra had violated her family maintenance plan by missing drug tests, even after being warned that missing tests would result in loss of custody. In addition, Sandra had allowed Abel, Sr., to have unauthorized visits with the boys, despite his history of missed and positive drug tests. For his part, Abel, Sr., had missed 30 random drug tests between March and June 2012 and had admitted in April 2012 to continued drug use. At the hearing on the supplemental petition in October, the court found the allegations true and further found that neither Sandra nor Abel, Sr., qualified for reunification services under section 361.5, subdivisions (a)(3) and (b)(13). The court ordered a hearing on termination of parental rights within 120 days. SSA was ordered to prepare an adoption assessment under section 361.5, subdivision (g)(1), to be submitted no later than 10 days before the termination hearing.[5]

During most of 2012, Abel, Sr., either tested positive for drugs or missed tests. He stopped visiting in July 2012, after Sandra lost custody, and resumed visiting in early December after being prompted by the social worker.[6] He visited for two hours a week.

In July 2013, the children were relocated to Sandra's parents' house. Abel, Sr.'s parents could no longer care for the children, in light of Andrew's severe disability and Abel, Jr.'s increasingly disruptive behaviors. Sandra's parents offered to take the children and to be considered as adoptive parents.

---

[5] The children's assessments for adoption as of October 1, 2012, found it probable that all three would be adopted, but they would be difficult to place because of their membership in a sibling set and because of Andrew's mental and physical handicaps. As of that date, there was no identified adoptive family.

[6] During part of July, Abel, Sr., was in a 30-day inpatient drug treatment facility.

4

Although initially reluctant to adopt the children, hoping that Sandra would get off drugs and be able to reunify, Sandra's parents eventually realized her ability to maintain sobriety could not be relied upon, at least for the foreseeable future. They undertook to adopt all three children. Both were retired and able to devote their days to caring for the boys, and they were intimately familiar with Andrew's special needs.

Sandra and Abel, Sr., each moved for a change in court orders on February 10, 2014, to have the children returned to their custody. In the alternative, Abel, Sr., moved for reunification services. For her part, Sandra moved for custody under supervision, for a temporary release to her for 60 days, for reunification services and more liberal visitation, or for long-term foster care and a transition plan to return the children to her.

The hearing on the two motions began on April 7, 2014. Sandra's outpatient recovery coach from one of her drug treatment centers, where she had enrolled in May 2012,[7] testified that Sandra was making good progress in her recovery. The coach was aware of Sandra's relapse in October 2012, but was not aware that Sandra had been using drugs more frequently during her enrollment. Sandra testified as well, admitting that she did not have a sponsor, even though in her declaration supporting her section 388 motion she had stated she had one.[8] Sandra testified that she used drugs approximately four times between July and October 30, 2012, while in a program.[9] She explained that her relapse of July 2012 was caused by her realization that Abel, Sr., was not going to be the devoted, involved father she wanted for her children, as her own father had been. Her coach also testified that Sandra relapsed when her family criticized her for the conduct that led to losing her children. Sandra explained her numerous missed tests between

---

[7] Sandra apparently enrolled in this program before July 2012, when she lost custody for failing to test and when she admitted using drugs again. Her counselor assigned her to a relapse prevention program.

[8] Her coach testified that Sandra had been without a sponsor for several months.

[9] During her direct examination, Sandra denied that she had used drugs after her July 2012 relapse. During cross-examination, Sandra admitted that she was still using drugs between July and October 2012, but "not like every day."

March 2011, when she left the second inpatient program, and July 2012, when the children were removed again, by saying she was overwhelmed with classes, meetings, and medical appointments. She persuaded her recovery coach to write a letter attesting to her successful participation in recovery programs, even though she was still using drugs at the time. For several months after the children were removed in July 2012, Sandra continued to miss drug tests.

The juvenile court denied Sandra's section 388 motion because, as the court saw it, nothing had changed. Sandra had not been honest about her drug use, either with her recovery coach or with SSA. The court did not credit Sandra's excuses for not testing and doubted that even as of the dates of the hearings, mid-April 2014, Sandra was sober. The court denied Abel, Sr.'s section 388 motion, given his history of drug use and his inability to remain drug-free for any length of time since the children had been detained.

The juvenile court then ruled on the section 366.26 question of parental rights. The court found that Andrew was specifically adoptable and the other two boys were both generally and specifically adoptable. It terminated Sandra's and Abel, Sr.'s parental rights, finding that none of the exceptions to adoption applied, and ordered adoption as the permanent plan.

## DISCUSSION

### I. Sandra's Appeal

Sandra has identified three issues on appeal. First, she maintains the juvenile court used the wrong standard of proof when evaluating her motion under section 388. It should have used the clear and convincing standard instead of preponderance of the evidence. In any event, she carried the burden of proof necessary to grant her section 388 motion. She bases her appeal from the termination of her parental rights on the assertion that the court wrongly decided the beneficial relationship exception.

6

## A.          Section 388 Motion

Section 388, subdivision (a), provides, "Any parent or other person having an interest in a child who is a dependent child of the juvenile court . . . may, upon grounds of change of circumstance or new evidence, petition the court in the same action in which the child was found to be a dependent child of the juvenile court . . . for a hearing to change, modify, or set aside any order of court previously made or to terminate the jurisdiction of the court.  The petition shall be verified and, if made by a person other than the child or the nonminor dependent, shall state the petitioner's relationship to or interest in the child or the nonminor dependent and shall set forth in concise language any change of circumstance or new evidence that is alleged to require the change of order or termination of jurisdiction."

California Rules of Court, rule 5.570(h)(1) defines the burden of proof for section 388 motions.  "(B) If the request is to . . . modify any orders related to custody or visitation of the child for whom reunification services were not ordered under section 361.5(b)(4), (5), or (6), the petitioner must show by clear and convincing evidence that the proposed change is in the best interests of the child.  [¶]  (C) All other requests require a preponderance of the evidence to show that the child's welfare requires such a modification."[10]

In this case, SSA filed a supplemental petition in July 2012.  The court ruled that neither Sandra nor Abel, Sr., was eligible for reunification services under section 361.5, subdivision (a)(3) as to Andrew and Abel, Jr., and as to all three children under section 361.5, subdivision(b)(13).[11]  The juvenile court did not rest its decision

---

[10]     California Rules of Court rule 5.570(h) provides, "(1) The petitioner requesting the modification under section 388 has the burden of proof."

[11]     Section 361.5, subdivision (b) provides, "Reunification services need not be provided to a parent or guardian described in this subdivision when the court finds, by clear and convincing evidence, any of the following:  [¶] . . . [¶] (13) That the parent or guardian of the child has a history of extensive, abusive, and chronic use of drugs or alcohol and has resisted prior court-ordered treatment for this problem during a three-year period immediately prior to the filing of the petition that brought that child to the court's attention, or has failed or refused

7

regarding services for Sandra and Abel, Sr., on subdivisions (b)(4), (5), or (6) of section 361.5; therefore, preponderance of the evidence is the correct standard of proof as to the effect of the change on the children's welfare. It is likewise the burden of proof as to a showing of changed circumstances. (*In re D.B.* (2013) 217 Cal.App.4th 1080, 1089.)

Sandra's first argument, regarding the standard of proof, rests on an incorrect premise. The juvenile court reached the same conclusion under both standards – clear and convincing and preponderance. The court found that Sandra had not met her burden to show changed circumstances or that granting the motion would be in the children's best interests under either standard.[12] Accordingly, we move on to her second argument.

Sandra maintains that she showed both a change of circumstances and the best interest of the children in the evidence she presented. We review the court's decision whether to grant a motion under section 388 for abuse of discretion. (*In re J.C.* (2014) 226 Cal.App.4th 503, 525-526.)

After reunification services are terminated, a parent's right to the care, custody and companionship of the child no longer takes precedence. Instead, the focus shifts to the child's need for permanency and stability. (*In re Marilyn H.* (1993) 5 Cal.4th 295, 307, 309.) In fact, there is a rebuttable presumption that continued care is in the best interest of the child (*id.* at p. 310), especially when the permanent plan is adoption rather than foster care. A court hearing a motion for change of placement after reunification services have been terminated must take into account this shift of focus to the best interest of the child. (*In re Stephanie M.* (1994) 7 Cal.4th 295, 317.) The imminence of the permanency planning hearing makes the child's interest in stability foremost and outweighs the parent's interest in reunification. (*In re Edward H.* (1996) 43

---

to comply with a program of drug or alcohol treatment described in the case plan required by Section 358.1 on at least two prior occasions, even though the programs identified were available and accessible."

[12] We note that during the oral argument phase of Sandra's section 388 motion, her counsel confidently assured the court that the correct standard was clear and convincing evidence.

Cal.App.4th 584, 594.) Once reunification services are at an end, there is a rebuttable presumption that stability in an existing placement is in the best interest of the child, particularly when such placement is leading to adoption by the long-term caretakers. (*In re Stephanie M., supra*, 7 Cal. 4th at p. 317.) To rebut that presumption, a parent must make some factual showing that the best interests of the child would be served by modification.

In this case, Sandra sought more reunification services (after hers had been terminated), a trial return of custody (with or without a 60-day limit), or long-term foster care with a transition plan. None of these alternatives would promote stability for the children – simply more delay before selecting and implementing a permanent plan – and therefore none of the alternatives would be in their best interests. (See *In re. J.C.* (2014) 226 Cal.App.4th 503, 527 [parent must show changed circumstances and satisfaction of child's need for permanency and stability].)

The juvenile court did not believe Sandra had conquered her dependence on drugs. She had a history of going for a relatively long period without drugs and then relapsing when she felt depressed, overwhelmed, or thwarted, and the court did not credit Sandra's excuses for failing to turn up for drug tests. SSA also presented evidence Sandra had allowed Abel, Sr., to have unauthorized contact with the boys, indicating once again that she did not have her children's welfare uppermost in her mind.[13]

The court did not abuse its discretion when it determined that Sandra had not made her case for a modification. The circumstance that prompted the children's original detention – Sandra's drug use – had not changed. She had been through half a dozen drug treatment programs, including two inpatient ones, and yet was still relapsing; she had not had a sponsor for several months and had told the court under penalty of perjury she did have one. Dishonesty and excuses are hallmarks of the behavior of users

---

[13] Given Abel, Sr.'s inability to stay off of drugs for any extended period, it is almost certain that he was under the influence on at least some of the occasions when Sandra allowed him to see the children.

still in thrall to drugs. The court's determination that Sandra fit the pattern cannot be disturbed on appeal. She also did not show that changing the status quo would promote her sons' need for permanency and stability. On the contrary, it would simply introduce more uncertainty as to their ultimate fate into their young lives.

### B. Termination of Rights (section 366.26)

Sandra maintains the juvenile court erred by not properly applying the beneficial relationship exception of section 366.26, subdivision(c)(1)(B)(i), which provides an exception to the preference for adoption where the court finds that termination of parental rights would be detrimental to the child because "the parents . . . have maintained regular visitation and contact with the child and the child would benefit from continuing the relationship." There is no dispute that Sandra has maintained regular visitation with her sons. The question is therefore whether the boys would benefit from continuing the relationship with her as their mother.

We believe the court's analysis in *In re Bailey J.* (2010) 189 Cal.App.4th 1308, best describes the standard of review for the beneficial relationship exception of section 366.26. The *Bailey J.* court held that the exception implicates both substantial evidence and abuse of discretion. "Since the proponent of the exception bears the burden of producing evidence of the existence of a beneficial parental or sibling relationship, which is a factual issue, the substantial evidence standard of review is the appropriate one to apply to this component of the juvenile court's determination. Thus . . ., a challenge to a juvenile court's finding that there is no beneficial relationship amounts to a contention that the 'undisputed facts lead to only one conclusion.' [Citation.] Unless the undisputed facts established the existence of a beneficial parental or sibling relationship, a substantial evidence challenge to this component of the juvenile court's determination cannot succeed. [¶] The same is not true as to the other component of these adoption exceptions. The other component . . . is the requirement that the juvenile court find that the existence of that relationship constitutes a 'compelling reason for determining that

10

termination would be detrimental.' [Citation.] A juvenile court finding that the relationship is a 'compelling reason' for finding detriment to the child is *based* on the facts but is not primarily a factual issue. It is, instead, a 'quintessentially' discretionary decision, which calls for the juvenile court to determine the *importance* of the relationship in terms of the detrimental impact that its severance can be expected to have on the child and to weigh that against the benefit to the child of adoption. [Citation.] Because this component of the juvenile court's decision is discretionary, the abuse of discretion standard of review applies." (*Id.* at pp. 1314-1315.) At the point when the court is considering terminating a parent's rights – after all efforts of reunification have failed and, usually, a significant amount of time in a child's life has flown by – a parent has to present "compelling evidence . . . to establish the benefit exception." (*In re J.C., supra,* 226 Cal.App.4th at pp. 532-533.)

"The 'benefit' necessary to trigger this exception has been judicially construed to mean, 'the relationship promotes the well-being of the child to such a degree as to outweigh the well-being the child would gain in a permanent home with new, adoptive parents. In other words, the court balances the strength and quality of the natural parent/child relationship in a tenuous placement against the security and the sense of belonging a new family would confer. If severing the natural parent/child relationship would deprive the child of a substantial, positive emotional attachment such that the child would be greatly harmed, the preference for adoption is overcome and the natural parent's rights are not terminated.' [Citations.] [¶] A parent asserting the parental benefit exception has the burden of establishing that exception by a preponderance of the evidence. [Citation.] It is not enough to show that the parent and child have a friendly and loving relationship. [Citation.]" (*In re J.C., supra*, 226 Cal.App.4th at pp. 528-529.) Courts have looked to the age of the child, the amount of time the child has been in the parent's custody, the positive or negative effects of their interactions, and the child's

11

particular needs as factors to be considered when applying the beneficial relationship exception. (*In re Angel B.* (2002) 97 Cal.App.4th 454, 467.)

We presume the correctness of the order, considering the record in its favor, and affirm it if it is supported by substantial evidence. The parent has the burden of showing an insufficient evidentiary basis for the court's decision. (*In re L.Y.L.* (2002) 101 Cal.App.4th 942, 947.)

The juvenile court had substantial evidence upon which to base its finding that Sandra had not established the substantial benefit needed to trigger the exception. Both Abel, Jr., and Abraham were detained at birth. Except for the months they spent with Sandra during the family maintenance program, the two boys had been cared for by their grandparents for their entire lives.[14] For his part, Andrew had spent a little over two years in Sandra's custody. At the time of the hearing in April 2014, Andrew was going on six years old, Abel, Jr., was four, and Abraham was nearly three. Most of their lives had been spent out of Sandra's care. While her visits were positive, the amount of time she spent with them was a small fraction of the time necessary to create a parental bond. "To meet the burden of proof for the section 366.26, subdivision (c)(1)(A) exception, the parent must show more than frequent and loving contact or pleasant visits." (*In re L.Y.L., supra,* 101 Cal.App.4th at pp. 953-954.)

Finally, what these boys needed was a parent who did not turn to drugs when the going got tough. Sandra demonstrated she is not that parent. This case began in February 2010, when Abel, Jr., her second son, was born with drugs in his system. The termination hearing occurred in April 2014, more than four years later. During that period, Sandra was dodging drug tests and using drugs; her participation in various treatment programs was not having the necessary effect. "The reality is that childhood is brief; it does not wait while a parent rehabilitates himself or herself. The nurturing

---

[14] Abel, Jr., had spend 11 months in Sandra's custody. Abraham had been with her for the first year of his life.

required must be given by someone, at the time the child needs it, not when the parent is ready to give it." (*In re Debra M*. (1987) 189 Cal.App.3d 1032, 1038.)

The court properly exercised its discretion when it decided that Sandra had not shown a "compelling reason" to find detriment to the boys if her parental rights were terminated. All three boys are still quite young, and Sandra's parents have demonstrated their ability to meet their needs. Likewise, substantial evidence supports the court's determination that maintaining a relationship with Sandra does not outweigh the benefits of adoption for the boys. We may not disturb the court's decision to terminate her parental rights.

**II.        Abel, Sr.'s Appeal**

Abel, Sr., appeals only from the order under section 366.26 terminating his parental rights.[15] He wisely does not try to convince us that, notwithstanding his chronic drug use, the children should be returned to him. Instead, he attacks the court's order terminating his parental rights obliquely, on the issue of the children's adoptability.

The court found that Andrew was specifically adoptable and the other two boys were both generally and specifically adoptable. Abel, Sr., disagrees, maintaining all three boys are only specifically adoptable – because they are a sibling set that includes Andrew – and Sandra's parents are not going to follow through with adoption. They are actually unwilling to adopt and are going along with the idea only under pressure from SSA. To keep the children from becoming "legal orphans," Abel, Sr., should therefore keep his parental rights. He recommends legal guardianship in lieu of adoption as the choice the juvenile court should have made.

We review the juvenile court's order terminating parental rights for substantial evidence. (*In re Autumn H*. (1994) 27 Cal.App.4th 567, 576.) Likewise, we

---

[15]        Abel, Sr., also purports to join Sandra's arguments regarding her section 388 motion, but since this was not his motion and he did not appeal from the ruling on his own motion, he has no standing to weigh in on this subject.

13

review the juvenile court's determination that a child is likely to be adopted within a reasonable time for substantial evidence. (*In re I.I.* (2008) 168 Cal.App.4th 857, 869.) "The issue of adoptability posed in a section 366.26 hearing focuses on the *minor*, e.g., whether the minor's age, physical condition, and emotional state make it difficult to find a person willing to adopt the minor. [Citations.] Hence, it is not necessary that the minor already be in a potential adoptive home or that there be a proposed adoptive parent 'waiting in the wings.' [Citations.]" (*In re Sarah M*. (1994) 22 Cal.App.4th 1642, 1649.) The identification of a prospective adoptive family indicates that a child is likely to be adopted within a reasonable time. (*In re Asia L.* (2003) 107 Cal.App.4th 498, 510.)

When a child is deemed adoptable only because a particular family is willing to adopt him or her (specifically adoptable), the juvenile court must determine whether a legal impediment to adoption exists.[16] (*In re Carl R.* (2005) 128 Cal.App.4th 1051, 1061.) In addition, the court considers whether the prospective adoptive parent can meet the child's needs. (*In re Helen W.* (2007) 150 Cal.App.4th 71, 80.)

The original adoption study, dated October 1, 2012, determined that it was probable all three children would be adopted, but they would be difficult to place because of Andrew's handicaps and their membership in a sibling set. As of January 24, 2013, SSA had not identified any relatives who would be willing to adopt. In July, the children were placed with Sandra's parents, after she lost custody, who stated they were not willing to consider adoption at that point, in hopes that Sandra could rehabilitate. They did not want the children separated, however, and offered their home as an alternative to separation.

SSA's evidence showed that Sandra's parents were willing to adopt all three boys as of the termination hearing. Their prior hesitation and waffling between adoption and guardianship stemmed from their hopes that Sandra would get free of drugs

---

[16] A legal impediment would include an insufficient gap between the ages of parent and child (see Fam. Code, § 8601) or lack of consent by the parent's spouse (see Fam. Code, § 8603).

and regain custody. By November 2013, however, Sandra's parents recognized the likelihood that she was not going to remain drug-free. They authorized SSA to begin their adoption home study.[17] They attended an adoption orientation meeting in late November. By January 2014, they had committed fully to adoption as the plan for the children and had begun the mediating post-adoption contact between the children and Sandra and Abel, Sr. In fact, Sandra's father told the social worker he did not understand why there would be any confusion about his and his wife's intention to adopt. SSA thus presented evidence to support a finding of general and specific adoptability for Abel, Jr., and Abraham and specific adoptability for Andrew.

The court's finding that Andrew is specifically adoptable does not necessarily extend to the other two children. In *In re Gerald J.* (1991) 1 Cal.App.4th 1180, for example, the court found that one brother was adoptable while the other was not. The court terminated parental rights as to the adoptable brother and ordered long-term foster care for the other. (*Id.* at p. 1185.) A child's membership in a sibling set is relevant to determining whether he or she will be difficult to place, but the ultimate decision about a child's adoptability rests on the characteristics of the individual child. (*In re I.I., supra,* 168 Cal.App.4th at p. 872.) While keeping siblings together is a laudable goal, it may be that a child's interests in permanence and stability are better served by an individual placement. (*Ibid.*) Accordingly, Andrew's handicaps and specific adoptability do not render Abel, Jr., and Abraham only specifically adoptable.

The adoptability status of the boys hardly matters, however, because even if all three are only specifically adoptable, Sandra's parents are willing to adopt all three. The trial court's finding of adoptability thus rests on substantial evidence, and we may not disturb it on appeal.

---

[17] Abel, Sr., argues that the delay in completing the adoption home study somehow implies Sandra's parents are unwilling to adopt. The delay in completing the home study does not appear to have originated with Sandra's parents, but rather with SSA. In any case, completing a home study is not a prerequisite to a finding of adoptability. (*In re Brandon T.* (2008) 164 Cal.App.4th 1400, 14510-1411.)

As for Abel, Sr.'s contention Sandra's parents should be the children's guardians instead of their adoptive parents, the legislative scheme is based on the perception that guardianship is not in the best interests of children who cannot reunify with their parents. The most permanent and stable setting for a child is an adoptive home. When a biological parent cannot or does not fulfill a parental role, the child is best served by living with someone who will place the child's interests first, at least until the child has a chance to grow up. (*In re Beatrice M.* (1994) 29 Cal.App.4th 1411, 1419.)

Unquestionably Abel, Sr., cannot occupy a parent's place in his sons' lives because of his preoccupation with drugs. That requires the children to look elsewhere for stability and permanence. The Legislature has unequivocally stated that adoption is preferred over any other alternative. The boys are already disadvantaged by their biological parents' abdication of their responsibilities. They deserve a shot at the best alternative on offer – adoption and a forever home.

## DISPOSITION

The orders of the juvenile court are affirmed.

BEDSWORTH, ACTING P. J.

WE CONCUR:

ARONSON, J.

THOMPSON, J.

16